FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ JUN 1 2 2007 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

MICHAEL ANDRICKSON,

                 Petitioner,

-against-

W. BROWN, *Superintendent,*
*Eastern Correctional Facility*,

                 Respondent.

-------------------------------------------------------------- X

05 CV 4506 (ARR)

NOT FOR ELECTRONIC
OR PRINT
PUBLICATION

OPINION
AND ORDER

ROSS, United States District Judge:

Pro se petitioner Michael Andrickson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 20, 2005. By order dated December 2, 2005, the petition was stayed to enable exhaustion of claims of ineffective assistance of counsel. On October 23, 2006, Mr. Andrickson returned to this court, filing a motion to lift the stay and an amended petition.

Mr. Andrickson's amended petition raises the following claims: (1) that he was denied his right to due process because his guilt was not proven beyond a reasonable doubt; and (2) that he was denied the effective assistance of trial counsel based on allegations that counsel (a) failed to properly prepare for trial by investigating medical evidence and failed to call an expert witness to rebut the prosecution's medical expert; (b) failed to show a motive for the complainant to lie; (c) improperly waived his right to a jury trial; and (d) improperly advised petitioner not to testify. For the reasons stated below, the petition is denied.

## BACKGROUND

Following a bench trial before the Hon. Joseph Kevin McKay, New York State Supreme

1

Court, Queens County, petitioner was convicted of two counts of first degree rape, two counts of first degree sexual abuse, and one count of first degree sodomy. On December 20, 2001, petitioner was sentenced to concurrent determinate terms of imprisonment of fifteen years for each of the rape counts and the sodomy count and two years for each of the sexual abuse counts.

At trial, the state presented evidence that late in the evening of August 20, 1999, Jelitza Painchault went with petitioner to his apartment where petitioner repeatedly sexually assaulted her and petitioner's cousin, co-defendant Ralph Ortiz, sexually abused her.

The Appellate Division, Second Department, affirmed petitioner's conviction. See People v. Andrickson, 7 A.D.3d 725 (N.Y. App. Div. 2d Dep't 2004). On June 22, 2004, the New York Court of Appeals denied leave to appeal.

Petitioner subsequently sought to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10. Petitioner argued that he was denied the effective assistance of trial counsel for the same reasons he raises in his amended petition. The New York State Supreme Court, Queens County, denied the motion by decision dated March 17, 2006. The Appellate Division denied leave to appeal on August 2, 2006.

## DISCUSSION

### 1. Insufficient Evidence of Forcible Compulsion

Petitioner argues, as he did on direct appeal, that there was insufficient evidence of forcible compulsion to convict him of these crimes. The Appellate Division rejected this argument, stating:

> Viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the element of forcible compulsion beyond a reasonable doubt.

2

> Moreover, resolution of issues of credibility, as well as the weight
> to be accorded to the evidence presented, are primarily questions to
> be determined by the trier of fact, which saw and heard the
> witnesses. Its determination should be accorded great weight on
> appeal and should not be disturbed unless clearly unsupported by
> the record. Any possible improper motive of the complainant, and
> any inconsistencies in her testimony, merely raised issues of
> credibility for the trier of fact to determine. Upon the exercise of
> our factual review power, we are satisfied that the verdict of guilt
> was not against the weight of the evidence.

Andrickson, 7 A.D.3d at 725-26 (internal citations omitted). This decision constitutes an adjudication on the merits, warranting deference under 28 U.S.C. § 2254(d). This decision was a correct application of federal law and so habeas relief is not warranted.

A due process sufficiency challenge must fail if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see Policano v. Herbert, 430 F.3d 82, 86 (2d Cir. 2005). "[P]etitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000). "State law determines the elements of a crime that must be supported by sufficient evidence to satisfy constitutional due process." Policano, 430 F.3d at 92.

Under New York law, a person is guilty of rape in the first degree when he "engages in sexual intercourse with another person [b]y forcible compulsion." N.Y. Penal Law § 130.35[1]. A person is guilty of sexual abuse in the first degree when he "subjects another person to sexual contact [b]y forcible compulsion." N.Y. Penal Law § 130.65[1]. A person is guilty of sodomy in the first degree when he "engages in oral sexual conduct or anal sexual conduct with another

person [b]y forcible compulsion." N.Y. Penal Law § 130.50[1].[1]

Under New York law,

> "Forcible compulsion" means to compel by either:
> a. use of physical force; or
> b. a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped.

N.Y. Penal Law § 130.00[8].

The evidence at trial sufficed to permit the conclusion that petitioner employed "forcible compulsion" when engaging in the sexual conduct for which he was convicted. Jelitza Painchault testified that petitioner used force and threats to rape her, abuse her, and sodomize her. Although petitioner's co-defendant testified to a different version of events and the medical evidence was consistent with both consent and forcible compulsion, the trier of fact–the judge in this case–was entitled to credit Ms. Painchault's testimony, as he explained he did. (See Tr. 832-833.) Having considered the evidence in the light most favorable to the prosecution, the court cannot conclude that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Hogan v. West, 448 F. Supp. 2d 496, 513-14 (W.D.N.Y. 2006) ("[T]he testimony of a single uncorroborated witness is sufficient to establish a defendant's guilt beyond a reasonable doubt, even if that witness's testimony is not entirely consistent." (internal citations omitted)).

The Appellate Division's adjudication of this claim was a correct application of federal law and so habeas relief is not warranted. To the extent petitioner challenges the weight of the

---

[1] At the time of petitioner's trial, but before his conviction became final, the statute defined first degree sodomy as "deviate sexual intercourse with another person [b]y forcible compulsion."

4

evidence supporting his conviction, such a claim is not cognizable on habeas review. See Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001).

## *2. Ineffective Assistance of Trial Counsel*

Petitioner argues that he was denied the effective assistance of counsel based on several alleged failings of trial counsel. None of these claims has merit.

### *(a) Failure to Investigate and Call Expert Witness*

Petitioner argues that counsel was ineffective for conducting an inadequate pretrial investigation of the medical evidence by failing to consult a medical expert and, relatedly, that counsel was ineffective for failing to call a medical expert to testify in response to the prosecution's expert. This claim is without merit.

At trial, Dr. Lorraine Giordano testified for the prosecution as an expert in forensic examination of sexual assault and emergency medicine. Dr. Giordano reviewed the complainant's medical records from her hospital visit the morning after the events in question. This medical evidence, as explained by Dr. Giordano, indicated that Ms. Painchault experienced much pain, limiting the vaginal examination, and exhibited excoriations and redness of the superpubic region; swelling of labia minora and extreme vaginal tenderness with inflammation; and redness in the perineal region.

Dr. Giordano testified on direct that one could never conclude simply from such an examination "that that person was sexually assaulted and raped." She testified that you would need a history from the patient or an observer. (Tr. 522-23.)

On cross-examination, petitioner's counsel elicited testimony about the absence of evidence of injuries one might expect from the version of events Ms. Painchault described. (See

5

Tr. 526-27, 530, 538-39.) As Dr. Giordano had testified on direct, she said the evidence was consistent with rape (Tr. 539), but also consistent with consensual sexual intercourse (Tr. 543, 547). Dr. Giordano said, "It's impossible for the examiner to make a determination [that] the injuries are from consensual versus non-consensual intercourse." (543-44.) After Dr. Giordano mentioned a study finding more injuries, especially in certain areas around the genitalia, in women who have had non-consensual intercourse than in women who have had consensual intercourse, petitioner's counsel reminded Dr. Giordano that she had previously mentioned a study finding a lesser likelihood of injuries when the sexual assailant knows the victim. (Tr. 544-45.) Counsel concluded his cross-examination by having Dr. Giordano agree that after reviewing the medical records she could not state with any medical certainty that Ms. Painchault had "forcible intercourse." (Tr. 549.)

In summation, co-defendant's counsel, who also cross-examined Dr. Giordano on this topic, argued that the absence of marks on Ms. Painchault's neck, face and arms raised doubts about her version of events. (Tr. 772-74.) Petitioner's counsel argued in summation that the absence of marks indicated an absence of force. (Tr. 792, 796.) Counsel also argued that the expert's testimony was equally consistent with consensual sex and then, seizing on the expert's statement that level of force was a factor affecting whether injuries result, further argued that the medical evidence disputed Ms. Painchault's testimony. (Tr. 801-03.)

The prosecution acknowledged in summation that the medical evidence was "consistent with force or no force, consent or no consent," but went on to argue that the evidence suggested force and that "[t]he medical evidence corroborates" Ms. Painchault's testimony. (Tr. 825-26.)

Upon rendering his verdict, the trial judge stated, "There was some supporting evidence

which counsel carefully argued could have been consistent with innocence, and I have weighed that, but I find overwhelming evidence that this occurred as [the complainant] said . . . ." (Tr. 833.)

The 440 court rejected petitioner's ineffective assistance challenge, holding:

> [T]he expert testified during cross-examination that in this case the physical examination was not conclusive as to whether the complainant was raped (the People's theory) or whether the sex was consensual (defendant's claim). This clearly neutralized the expert's impact on the case. [That] defense counsel was able [to] elicit this during cross meant that he had investigated and prepared for this trial.
> As to presenting his own expert, the defendant fails to state what that expert would or could have testified to. Unless the expert could state that the injuries observed on the complainant were only consistent with consensual sex, the defendant's medical expert could not do any better than defense counsel did on cross-examination of the People's medical expert.

People v. Andrickson, Ind. No. 2685/99 (N.Y. Sup. Ct., Queens Co., Mar. 17, 2006). This decision that counsel had provided adequate representation was neither contrary to, nor an unreasonable application of Strickland v. Washington, 466 U.S. 668, 687 (1984), and so habeas relief is not warranted.

The record does not reflect whether counsel consulted with an expert to educate himself about the incidence of trauma in rape cases or to explore the possibility of presenting expert testimony. Even assuming that counsel failed to do so and, moreover, that such an omission was unreasonable, petitioner has provided no reason to believe that Dr. Giordano's testimony was controversial or that another expert witness could have refuted it or even significantly undermined it.

Unlike Gersten v. Senkowski, 426 F.3d 588 (2d Cir. 2005), and that line of cases, on

7

which petitioner relies, he was not charged with sexual abuse of a child and the medical evidence was not as central to the question of guilt. Where, as here, the issue is consent and not whether the sexual conduct even occurred, the medical evidence is less central because, as the prosecution's expert testified, it is "impossible" to distinguish between consensual and non-consensual sexual intercourse solely on review of the medical records. Petitioner has presented the court with no reason to believe that Dr. Giordano's testimony on this or any other point was inaccurate. As a result, petitioner has not established that he was prejudiced by any purported failure on counsel's part. Habeas relief is, therefore, not warranted.

*(b) Motive to Lie*

Petitioner next argues that counsel was ineffective for failing to show a motive for the complainant to lie. Petitioner does not specify what motive to lie he wishes counsel had developed at trial. The record indicates that counsel did suggest a motive to lie–humiliation in response to his client's insulting comments to Ms. Painchault after consensual sex. There is no reason to believe any additional development of this motive would have been useful nor that the absence of such development was in any way prejudicial. Because petitioner has failed to satisfy either the first or second prongs of Strickland, habeas relief is not warranted on this claim.

Petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment," and that it constitutes "sound trial strategy." Strickland, 466 U.S. at 689. "Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." Dunham v. Travis, 313 F.3d 724, 732 (2d Cir.2002) (internal quotations omitted); see also United States v. Luciano, 158 F.3d 655, 660 (2d Cir.1998) ("[T]he

8

conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken."). In addition, "[c]ross-examination of rape victims is a particularly delicate matter of trial strategy." Santos v. Greiner, No. 99 Civ. 1545, 1999 WL 756473, at *9 (S.D.N.Y. Sep. 24, 1999).

The record reflects that petitioner's counsel conducted a lengthy and thorough cross-examination of the complainant, including questions about her prior relationship with petitioner, inconsistencies in her prior statements to the police and the grand jury, and other details of the night in question. Furthermore, Mr. Ortiz's counsel also cross-examined Ms. Painchault, inquiring into the effect of insulting comments petitioner made about her. (Tr. 423-426, 428-29.) Subsequently, Mr. Ortiz testified that Ms. Painchault expressed a vindictive intent in response to petitioner's comments. (Tr. 650-51.) And petitioner's counsel also questioned Mr. Ortiz about these comments and her response. (Tr. 743-44.) In their respective summations, Mr. Ortiz's counsel and petitioner's counsel argued that Ms. Painchault's motive to lie was humiliation at the comments petitioner made. (Tr. 779-80, 785, 801, 803.)

Petitioner has not overcome the strong presumption that counsel's conduct was reasonable, nor has he established that he was prejudiced by counsel's failure to develop any further the complainant's motive to lie. It is inconsequential that this motive emerged on Mr. Ortiz's counsel's cross-examination. See United States v. Bari, 750 F.2d 1169, 1182 (2d Cir. 1984) ("Given that the cross-examination undertaken by other counsel was devoted largely to impeachment and was vigorous and comprehensive, further cross-examination by Benfield's counsel might well have been counterproductive."). This claim is, therefore, denied.

*(c) Waiver of Jury Trial*

Petitioner argues that trial counsel was ineffective for "improperly waiv[ing] a jury trial." Respondent argues that petitioner failed to exhaust this claim, but that it should be deemed exhausted and procedurally barred because petitioner failed to raise the claim on direct appeal. (Resp. Mem. 27-32, 36 n.10.) Petitioner listed this claim in his 440 motion (see Andrickson 440 Aff. ¶ 1 and p. 19), however, he did not elaborate on the basis for this claim.

Regardless, the claim is without merit. At trial, the court accepted petitioner's waiver of his right to a jury trial after questioning petitioner's counsel and petitioner himself and obtaining a written waiver executed in open court. (Tr. 88-95.) The trial court explained that waiver of trial by jury was distinct from the severance motion then pending before him. (Tr. 88-89.) Petitioner's counsel stated that he discussed waiver with petitioner and that they had several reasons in addition to severance or dual juries for deciding to proceed via bench trial, though he did not state these reasons on the record. (Tr. 89-90.) The trial court then explained to petitioner and his co-defendant the nature of their right to a jury trial, the competency of juries, and the difference between unanimity of 12 jurors and one judge. (Tr. 91-92.) The court further explained that the choice to waive a jury belonged to petitioner, not counsel, and that the court could not promise anything about the result. (Tr. 92-93.) Petitioner stated on the record that he decided to waive a jury and proceed via bench trial and to withdraw the severance motion. (Tr. 93.)

This record establishes that petitioner knowingly, intelligently, and voluntarily waived his right to a jury trial. See Adams v. United States ex rel. McCann, 317 U.S. 269, 275 (1942). Petitioner has presented nothing to suggest that this waiver was coerced. Nor has petitioner

given any reason to suggest that counsel's advice on this point was erroneous or prejudicial. Habeas relief is therefore not warranted on this claim. See Bruno v. Conn. Comm'r of Corr., No. 04 Civ. 101, 2006 U.S. Dist. LEXIS 74000, at *10-*13 (D. Conn. Sep. 30, 2006) (rejecting habeas claim that counsel was ineffective by waiving jury trial without petitioner's consent); Steele v. United States, No. 04 Civ. 6918, 2005 WL 704868, at *10-*13 (S.D.N.Y. Mar. 29, 2005) (finding counsel's strategy of pursuing a bench trial reasonable).

*(d) Right to Testify*

Petitioner finally argues that counsel was ineffective for improperly advising him not to testify in his own defense. Petitioner contends that his testimony would have been "similar to that of his co-defendant, in that the sexual intercourse was consensual." (See Andrickson 440 Aff. at ¶ 62.)

At trial, when petitioner's counsel rested, the court asked him, in petitioner's presence, whether "your client understands his right to testify and his right not to testify and that he should get advice from counsel, but it is his decision, and that's what he has decided to do in this case; is that correct?" (Tr. 600.) Counsel replied, "That's exactly what my client and I have discussed actually over the course of the last hour. My client and I were together and discussed the very issue of whether or not he would take the stand. He understood, and I told him explicitly in the end it's his decision to make, not mine. He should make it with my advice, and he reached that decision with my advice." (Tr. 600-01.)

Petitioner alleges that his counsel gave strategically poor advice, not that his counsel prevented him from testifying or failed to inform him of his right to testify. Had such a claim been raised, it, too, would be unsuccessful. See Brown v. Artuz, 124 F.3d 73, 78-80 (2d

11

Cir.1997). Petitioner has not suggested any reason to doubt what the record makes clear: Counsel appropriately fulfilled his duty to inform petitioner of his right to testify and petitioner made an informed decision not to testify.

As for second-guessing counsel's advice not to testify, such advice is one of the defense "decisions that fall squarely within the ambit of trial strategy, and, if reasonably made, cannot support an ineffective assistance claim." United States v. Eisen, 974 F.2d 246, 265 (2d Cir.1992) (internal quotations omitted); see also Campos v. United States, 930 F. Supp. 787, 792 n.6 (E.D.N.Y. 1996) ("Had trial counsel merely advised petitioner not to testify, and had petitioner accepted this advice, petitioner could not now claim that his counsel rendered ineffective assistance since such advice would have been considered a function of the defense trial strategy."). Petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment," and that it constitutes "sound trial strategy." Strickland, 466 U.S. at 689.

Petitioner is not able to overcome that presumption in this case. It was reasonable for counsel to conclude that the best strategy would be for petitioner not to take the stand where he would run the risk of being cross-examined on the contents of the two statements he made to the police. See Dukes v. McGinnis, No. 99 Civ. 9731, 2000 WL 382059, at *9 (S.D.N.Y. Apr. 17, 2000) (collecting cases finding counsel's advice not to testify a reasonable trial strategy). Nor was petitioner prejudiced by his failure to testify. To the extent petitioner's testimony would have overlapped with his co-defendant's, the benefit of such cumulative testimony would have been minimal. The trier of fact found the complainant's version "extremely credible" and rejected the co-defendant's "testimony to the contrary as incredible." (Tr. 832-33.) There is no

12

reasonable probability that, had petitioner testified, the result of the proceeding would have been different. Given that petitioner cannot satisfy either the first or second prongs of <u>Strickland</u>, habeas relief is not warranted on this claim.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted with respect to any of the petitioner's claims, since the petitioner failed to make a substantial showing of any denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. <u>See</u> 28 U.S.C. § 2253.

SO ORDERED.

/S/
Allyne R. Ross
United States District Judge

Dated:  June 11, 2007
        Brooklyn, New York

13

SERVICE LIST:

*Pro Se* Petitioner
Michael Andrickson
02A0178
Eastern NY Correctional Facility
P.O. Box 338
Napanoch, NY 12458-0338


Attorney for Respondent
Ellen C. Abbot
Queens County District Attorney's Office
125-01 Queens Blvd.
Kew Gardens, NY 11415-1568